THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**HDI GLOBAL SPECIALTY SE,**

     **Plaintiff,**

**v.**                                                                   **Civil Action No. 3:19cv891**

**BASMA HASSAN, *et al*.,**

     **Defendants.**

<u>**MEMORANDUM OPINION**</u>

This matter comes before the Court on two motions:

(1)    Defendant Basma Hassan's Motion for Summary Judgment (the "Hassan Motion for Summary Judgment") (ECF No. 31); and,

(2)    Plaintiff HDI Global Specialty SE's ("HDI") Motion for Summary Judgment (the "HDI Motion for Summary Judgment")[1] (ECF No. 32).

Hassan and HDI filed Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[2]  Hassan and HDI have responded to the Cross Motions, (ECF Nos. 35, 36). These matters are ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not

---

[1] The Court will refer to the Hassan Motion for Summary Judgment and the HDI Motion for Summary Judgment, collectively as the "Cross Motions for Summary Judgment."

[2] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

(a) Motion for Summary Judgment or Partial Summary Judgment.  A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[3]

For the reasons stated below, the Court will grant HDI's Motion for Summary Judgment and

deny Hassan's Motion for Summary Judgment.

## I.  Factual and Procedural Background

In this declaratory judgment action, HDI seeks a determination from this Court that it

does not owe coverage under the Commercial General Liability Policy No. 18LB1439 (the

"Policy") because Defendant Short Pump did not notify HDI about Hassan's accident, which

occurred on Short Pump's premises, "as soon as practicable" as required under the Policy terms.

(Am. Compl. Ex. 2, Policy 10, ECF No. 23-2.)  Hassan suffered a serious leg injury while

trampolining at Short Pump in January of 2018, and Short Pump informed HDI about the

accident eighteen months later.  HDI brings this action against Short Pump Airsports, LLC,

Basma Hassan, and Robert Lupica as Defendants because all three parties are involved in state

court litigation regarding Hassan's injuries.  (Am. Compl. 2.)  In the matter at bar, HDI requests

---

[3] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  Plaintiff HDI Global Specialty SE exists in Germany.  (Am. Compl. 2, ECF No. 23.)  Defendant Hassan and Defendant Robert Lupica are residents of Virginia and Defendant Short Pump Airsports, LLC ("Short Pump") is a Virginia Corporation with its principal place of business in Henrico, Virginia.  (*Id.*)  The amount in controversy (the $1,000,000 policy limit) exceeds $75,000.  (*Id.* 3.)

Plaintiff brings a one-count Complaint against Defendants seeking a declaratory judgment concerning an insurance policy.  (*Id.* 5.)  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  The Declaratory Judgment Act expressly states that district courts "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).

a "declaration by this Court concerning the rights and obligations of [HDI] under the Policy . . . to Defendant Short Pump."[4]  (*Id.*)

### A.      Factual Background[5]

#### 1.      Hassan Suffers Injury from an Accident at a Trampoline Park

Short Pump operated a trampoline park located at 205 Town Center West Boulevard in Short Pump, Virginia. (ECF No. 23-1 at 1.)  In 2018, Robert Lupica was the "sole shareholder, and the operator and manager of the Short Pump trampoline park." (Pl.'s Mem. Supp. Mot. Summ. J. 2, ECF No. 33 (citing Am. Compl. ¶ 12).)

On January 20, 2018, Basma Hassan suffered an injury at Short Pump's trampoline park, causing permanent damages. (Am. Compl. 2.)  Hassan landed improperly on her leg while trampolining and had an ambulance escort her from the premises for medical attention. (*Id.* 3.) That same day, Short Pump prepared an Accident Report Form in relation to Hassan's accident (the "Report"). (Am. Compl., Ex. 3, ECF No. 23-3.)  The Report, one page in length, stated that the injury occurred on January 20, 2018 at 7:15 p.m., after Hassan "jumped on one leg" and "landed awkwardly on [her] leg and [it] buckled." (*Id.*)  An unnamed employee nearest to the accident gave her an "ice pack/called ambulance." (*Id.*)  The report did not document any witnesses or other information apart from Hassan's name, gender, and a phone number. (*Id.*)

After her accident, Hassan filed two negligence-based lawsuits in state court seeking to recover damages from Defendants Short Pump and Lupica:  (1) *Hassan v. Short Pump, et al.*,

---

[4] HDI and Short Pump are the two parties that entered the Policy. (Am. Compl., Ex. 2, 1, 4, 5, ECF No. 23-2.)  Lupica is not a named party to the Policy. (*Id.*)

[5] In recounting the factual history, the Court relates the undisputed facts as articulated in the parties' briefing on both motions for summary judgment. In ruling on each motion, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Case No. 087CL19003882 (Am. Compl., Ex. 1, ECF No. 23-1); and, (2) *Hassan v. Lupica, at al.*, Case No. 087CL20000461 (*Id.*, Ex. 5, ECF No. 23-5). In these state court actions, Hassan seeks "\$3,000,000.00 in damages, plus interests and costs, in relation to her trampoline accident." (*Id.* 6.) In 2019, while Hassan's state lawsuits remained pending in the Circuit Court for Henrico County ("Henrico County Circuit Court"), Short Pump began winding down its operations and, on March 22, 2019, sold its assets. (Def's Mot. Summ. J., Ex. 2, Petition to Windup Short Pump Air Sports, LLC 2; ECF No. 31-3.)

On August 15, 2019, five months after Short Pump sold all its assets and a year and a half months after Hassan's injury, Short Pump notified HDI about Hassan's accident using a "Liability Notice of Occurrence/Claim" form (the "Liability Claim Form"). (Am. Compl. Ex. 4, "Liability Notice," ECF No. 23-4.) The Liability Claim Form identified the date of the occurrence—Hassan's injury—and described the event as "unknown at this time." (*Id.* 1.) Short Pump sent the information to HDI because HDI had issued the Policy to Short Pump, which was in effect from July 27, 2017 to July 27, 2018. (Am. Compl., Ex. 2, ECF No. 23-2.) That Policy and its terms regarding notice of an "occurrence, offense, claim, or suit" forms the basis of this declaratory judgment action. (*Id.* 10.)

Hassan contends that Short Pump had notice of two other occurrences close in time to her own injury. HDI settled those two claims after receiving notice of the occurrences. First, on August 19, 2017, Benjamin Blanchard suffered injuries at Short Pump. (*See* Hassan Statement of Undisputed Facts ¶ 27 (citing Ex. 4, ECF No. 31-5.)) Roughly one year later, Short Pump notified HDI about the accident. (*Id.* ¶ 28.) HDI settled the Blanchard claim. (*Id.* ¶ 30.)

Second, on December 2, 2017, Stella Nicholas suffered injuries at Short Pump.[6] (*See* Hassan Statement of Undisputed Facts ¶ 31.)  Short Pump notified HDI about the accident approximately eight months later, on August 23, 2018.  (*Id.* ¶ 32.)  HDI settled the Nicholas claim.  (*Id.* ¶ 34.)

### 2.   **The Pertinent Policy Provisions**

HDI asserts that coverage does not exist under the Policy because Short Pump did not timely notify it "as soon as practicable" regarding Hassan's January 20, 2018 injury in compliance with the Policy terms.  (Am. Compl. 5, ECF No. 23.)  Section IV, Paragraph 2 of the Policy states in pertinent part:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
> **\*\*\***
> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>     **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
>         **(1)** How, when and where the "occurrence" or offense took place;

---

[6] The Court considers these facts in the light most favorable to Hassan, as the non-moving party in opposition to HDI's Motion for Summary Judgment.  *See Anderson*, 477 U.S. at 255.  Hassan cites *Short Pump v. Blanchard*, CL19002709-00, filed in the Henrico County Circuit Court, for support of her arguments about the Blanchard occurrence.  (*See* Hassan Statement of Undisputed Facts ¶ 27 (citing Ex. 4, ECF No. 31-5.)  The record shows that case was filed in state court, and it concluded on July 19, 2019, through settlement.  (*Id.* 2.)

HDI argues that the Court should not consider the Blanchard case because the record lacks "any evidence indicating that Short Pump knew of an 'occurrence' involving Benjamin Blanchard."  (Pl.'s Resp. 2, ECF No. 36.)  HDI similarly states that the Court should not consider the Nicholas case because the record lacks "any evidence indicating that Short Pump knew of an 'occurrence' involving Stella Nichol[a]s."  (*Id.* 3.)  Hassan does not cite information for the Nicholas claim or provide pertinent documents for the record, but the Court will nevertheless consider that claim in tandem with the Blanchard case when evaluating Hassan's contention that HDI did not provide instruction to Short Pump about how or when to notify it about an occurrence.  Viewing the facts in the light most favorable to Hassan, the Court can infer from this record that HDI settled claims with Blanchard after receiving notice about an occurrence at Short Pump.  The Court assumes, for the sake of Hassan's argument, that HDI received notice about the Nicholas claim while recognizing that Hassan did not support her assertions with appropriate evidence.

> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
> > **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
> >
> > **(2)** Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> **c.** You and any involved insured must:
>
> > **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> >
> > **(2)** Authorize us to obtain records and other information;
> >
> > **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> >
> > **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(Am. Compl., Ex. 2, Policy § IV ¶ 2a, ECF No. 23-2.) In Section V, the Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*, § V, ¶ 13.)

The record reflects that Hassan suffered injuries at the trampoline park on January 20, 2018, and Short Pump sent the Liability Claim Form to HDI on August 15, 2019, 572 days later. (Am. Compl. ¶ 16, Ex. 4, Liability Notice, ECF No. 23-4.) No party disputes that HDI did not have notice of Hassan's January 20, 2018 injury prior to August 15, 2019.[7] (*See* Hassan Statement of Undisputed Facts ¶ 13, ECF No. 31-1.)

---

[7] In its Response, HDI attaches a letter showing that Lupica and Short Pump had additional notice of Hassan's claim as of April 8, 2019—four months before notifying HDI—after receiving a demand letter from legal counsel regarding Hassan's injuries that she suffered at Short Pump on January 20, 2018. (Pl.'s Resp., Ex. 9, "April 8, 2019 Demand Letter," ECF No. 36-9.)

## B.   **Procedural History**

On December 3, 2019, HDI filed suit in this Court requesting the Court to declare "the right and obligations of [HDI] under the Policy issued by [HDI] to Defendant Short Pump." (Am. Compl. 2.)  HDI asserts "there is no coverage under the Policy for the Claim brought against Defendant Short Pump and Lupica because Defendant Short Pump and Lupica substantially and materially breached the Policy by not providing [HDI] with timely notice of [Hassan's] Accident, claim, and/or suit."[8]  (*Id.* 5.)  Because "Defendants Short Pump and Lupica were obligated to notify [HDI] of [Hassan's] Accident as soon as practicable because the accident could result in a claim," and they failed to do so for eighteen months, HDI asserts that Short Pump and Lupica "substantially and materially breached the notice conditions of the Policy." (*Id.* 6.)

The Court held an Initial Pretrial Conference with Counsel for both HDI and Hassan. (ECF No. 19.)  Several months later, HDI and Hassan filed the Cross Motions for Summary Judgment.  The Court now considers those motions.

---

[8] Defendants Short Pump and Lupica have not appeared or filed an Answer to the Amended Complaint.  On February 25, 2020, the Clerk entered Default as to Defendant Short Pump. (ECF No. 14.)  The Clerk has not entered Default as to Defendant Lupica, nor has Lupica filed an answer or otherwise appeared in this case.

Because the purpose of a declaratory judgment action is to declare the rights and legal relations of the interested parties, *see* 28 U.S.C. § 2201(a), the Court may grant summary judgment to HDI on this record, declaring that HDI does not owe coverage under the Policy. Because Lupica failed to appear or otherwise defend himself in this action, he will be precluded in the future from seeking coverage from HDI for any damages or awards stemming from Hassan's underlying state lawsuits.  *See* Restatement (Second) of Judgments § 33 cmt. b. (Am. L. Inst. 1982) ("If a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment.  This conclusive effect applies even as to a party who makes no appearance in the action.").

7

## II.  Cross-Motions for Summary Judgment

### A.  Federal Rule of Civil Procedure 56

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Liberty Lobby*, 477 U.S. at 248–50.  "The interpretation of an insurance policy is a question of law that is particularly well suited for summary judgment." *Minn. Lawyers Mut. Ins. Co. v. Protostorm LLC*, 197 F. Supp. 3d 876, 882 (E.D. Va. 2016) (citing *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 826 F. Supp. 155, 157 (E.D. Va. 1993), *aff'd*, 48 F.3d 778 (4th Cir. 1995)).

"A fact is material if the existence or non-existence thereof could lead a [finder of fact] to different resolutions of the case." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL 3653878, *4 (E.D. Va. June 30, 2016) (citing *Liberty Lobby*, 477 U.S. at 248).  Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24.  The parties must present these in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255.  Whether an inference is reasonable must be considered in conjunction with "competing inferences to the contrary." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995).  Nonetheless, the nonmoving "party is entitled 'to have the credibility of his [or her] evidence as forecast

8

assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting

*Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

> In the end, the non-moving party must do more than present a scintilla of evidence in its favor. Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable [finder of fact] to find the facts in his [or her] favor.

*Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted). The

ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient

evidence favoring the nonmoving party for a [finder of fact] to return a verdict for that party. If

the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

Where the court is faced with cross-motions for summary judgment, as in the instant case, "the

court must review each motion separately on its own merits." *Rossignol v. Voorhaar*, 316 F.3d

516, 523 (4th Cir. 2003).

## B.     Insurance Contract Interpretation Under Virginia Law

"Because the law of the state where an insurance contract is written and delivered

controls as to issues of coverage, Virginia law governs questions of coverage in this dispute."

*Builders Mut. Ins. Co. v. Wedge Constr., Inc.*, 423 F. Supp. 3d 253, 256 (E.D. Va. 2019) (internal

quotation marks and citation omitted). As with other contracts, under Virginia law the Court will

interpret an insurance policy "in accordance with the intention of the parties gleaned from the

words they have used in the document. Each phrase and clause of an insurance contract 'should

be considered and construed together and seemingly conflicting provisions harmonized when

that can be reasonably done.'" *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012)

(quoting *Floyd v. Northern Neck Ins. Co.*, 427 S.E.2d 193, 196 (Va. 1993)).  "It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning."  *Id.* (quoting *Barber v. VistaRMS, Inc.*, 634 S.E.2d 706, 712 (Va. 2006)).  "Words that the parties used are normally given their usual, ordinary, and popular meaning.  No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly."  *Id.* (quoting *City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 628 S.E.2d 539, 542 (Va. 2006)).

"Virginia law draws a distinction between the burden of proof for proving coverage and the burden of proof for demonstrating the applicability of an exclusion in an insurance policy."  *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 689–90 (E.D. Va. 2017).  First, "the insured bears . . . [the] burden to establish a *prima facie* case that coverage should be triggered.  In other words, the burden is on the policyholder at the outset to bring himself within the terms of the policy."  *Id.* at 690.  "Virginia has long followed the rule that if the insured fails to fulfill a condition of an insurance policy, the insurer's coverage obligation is not triggered."  *Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 830 (4th Cir. 2011) (citations omitted).  Second, "[o]nce the policyholder makes out a *prima facie* case, the burden shifts to the insurance company to prove an affirmative defense," which includes policy exclusions.  *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 800 F. Supp. 2d 722, 731 (E.D. Va. 2011) (citation omitted).

In determining whether the policyholder and the insurance company have met their burdens of proof, Virginia law requires the reviewing court to apply certain inferences.  Specifically,

> [i]nsurance policies are contracts whose language is ordinarily selected by
> insurers rather than by policy-holders. The courts, accordingly, have been
> consistent in construing the language of such policies, where there is doubt as to
> their meaning, in favor of that interpretation which grants coverage, rather than
> that which withholds it. Where two constructions are equally possible, that most
> favorable to the insured will be adopted. Language in a policy purporting to
> exclude certain events from coverage will be construed mostly strongly against
> the insurer.

*TravCo Ins. Co.*, 736 S.E.2d at 325 (quoting *PBM Nutritionals, LLC v. Lexington Ins., Co.*, 724

S.E.2d 707, 713 (Va. 2012)). In accordance with this standard of review, "it is incumbent upon

the insurer to employ exclusionary language that is clear and unambiguous." *SunTrust Mortg.,*

*Inc.*, 800 F. Supp. 2d at 731 (citation omitted).

However, when no ambiguity exists "there is no reason for applying the rules of contra

proferentem[9] or liberal construction for the insured." *TravCo Ins. Co.*, 736 S.E.2d at 325

(quoting *PBM Nutritionals, LLC*, 724 S.E.2d at 713). "[A]n insurance policy is not ambiguous

merely because courts of varying jurisdictions differ with respect to the construction of policy

language." *Id.* (quoting *PBM Nutritionals, LLC*, 724 S.E.2s at 713). When the terms of the

policy are clear, the Court need not look to decisions from other jurisdictions to interpret the

policy. *See id.* at 324.

### C.   Virginia Requirements Regarding Notice of the Claimant's Accident

As an initial matter, "[i]nsurance policy provisions requiring notice of an accident 'as

soon as practicable' are reasonable and enforceable." *Atlas Ins. Co. v. Chapman*, 888 F. Supp.

742, 745 (E.D. Va. 1995) *aff'd*, 92 F.3d 1176 (4th Cir. 1996). A requirement of "timely notice of

an accident or occurrence is a condition precedent to an insurance company's liability coverage

requiring 'substantial compliance by the insured.'" *State Farm Fire & Cas. Co. v. Walton*, 423

S.E.2d 188, 192 (Va. 1992) (quoting *Liberty Mut. Ins. Co. v. Safeco Ins. Co. of Am.*, 288 S.E.2d

469, 473 (Va. 1982)).  "An 'occurrence' which gives rise to a duty of notice to an insurance

company means an 'incident which was sufficiently serious to lead a person of ordinary

intelligence and prudence to believe that it might give rise to a claim for damages covered by

[the] policy.'"  *Id.* (internal quotation marks omitted).

    "Absent the requirement of prompt notice by the insured of all accidents and occurrences

which could implicate the policy, the insurer is at the mercy of its insured's willingness to reveal

such potential claims." *Chapman*, 888 F. Supp. at 745.  "[N]otice provisions are designed to

afford the insurer the opportunity to make a timely investigation of all circumstances

surrounding the accident and to prepare an adequate defense if necessary on behalf of the

insured." *Id.* (citation omitted).

    "Virginia law does not require that an insurance company be prejudiced by the delay in

notification; a prolonged delay in notification alone may breach the policy even absent a showing

of prejudice." *Penn–America Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 452 (E.D. Va. 2006) (citing

*Walton*, 423 S.E.2d 188).  "[I]n order for untimely notification to constitute a breach of the

policy, such that the insurer no longer bears the duty to defend the insured, the failure to notify

must be substantial and material." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Porter*, 272

S.E.2d 196 (Va. 1980)).  Three factors bear upon the materiality of a breach of the notice

provision of a policy:  "(1) the reasonableness of the delayed notice, (2) the amount of prejudice

suffered by the insurer as a result of the delay, and (3) the length of time that elapsed before

---

[9] "Contra Proferentem" is "[t]he doctrine that, in the interpretation of documents, ambiguities are to be construed unfavorably to the drafter." *Contra Proferentem*, BLACK'S LAW DICTIONARY (11th ed. 2019).

notice was given." *Id.* (citing *North River Ins. Co. v. Gourdine*, 135 S.E.2d 120 (Va. 1964); *Walton*, 423 S.E.2d 188).

"In determining the reasonableness of an insurer's notice, the Virginia Supreme Court follows an objective standard, requiring that an insurer be notified whenever it should reasonably appear to the insured that the policy may be implicated." *Id.* at 453 (citing *Dan River Inc. v. Comm. Union Ins. Co.*, 317 S.E.2d 485 (Va. 1984)). "Failure to give timely notice will not be excused when the insured subjectively concludes that coverage under the policy will not be implicated or is ignorant of the notice provisions." *Id.* (citing *Chapman*, 888 F. Supp. at 742) (emphasis added). The Supreme Court of Virginia has determined that an "occurrence" includes "an incident which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy." *Walton*, 423 S.E.2d 188, 192 (citing BLACK'S LAW DICTIONARY (6th ed. 1990)).

In most cases, the question of the reasonableness of a notice delay is a question for a jury. *See State Farm Fire & Cas. Co. v. Scott*, 372 S.E.2d 383, 386 (Va. 1988). The question of whether notice has been given "as soon as practicable" is generally "one of fact for the jury, or the court sitting without a jury, when the facts are disputed or the inferences are uncertain, or when there are extenuating circumstances for the delay." *State Farm Mut. Auto. Ins. Co. v. Douglas*, 148 S.E.2d 775 (Va. 1966). In cases "where reasonable men [or women] could not differ as to the inferences to be drawn from undisputed facts, . . . the question of delayed notice may be decided as a matter of law." *Chapman*, 888 F. Supp. at 745; *see also Douglas*, 148 S.E.2d at 777 ("[W]hen the facts are undisputed and certain the question becomes one of law for the court."). In this case and on this record, the Court may determine the issue of delayed notice

as a matter of law. *See Builders Mut. Ins. Co.*, 423 F. Supp. 3d at 257 (explaining when a court may consider timely or delayed notice of an occurrence as a matter of law).

### III. Analysis

The Court will grant HDI's Motion for Summary Judgment and deny Hassan's Motion for Summary Judgment.

### A.    The Parties' Arguments

In its Motion, HDI contends that the "undisputed facts demonstrate that [Short Pump's] delay in providing notice to [HDI] substantially and materially breached the notice provisions of the Policy as a matter of law." (Mem. Supp. HDI Mot. Summ. J. 6, ECF No. 33.) Because Hassan's injury required calling an ambulance, HDI posits that "any reasonable insured would have recognized that the policy would be involved, given the severity of Defendant Hassan's injury." (*Id.*) Short Pump's eighteen-month delay in informing HDI about Hassan's injury did not comport with giving notice "as soon as practicable" as required by the Policy. (*Id.* 7.) HDI further argues that the Court should not consider Hassan's arguments regarding notice or settlement of the Blanchard or Nicholas claims because Hassan did not adequately support her assertions with evidence. (Pl.'s Resp. 10, ECF No. 36.)

In her Motion, Hassan argues that Short Pump and Lupica did not breach the Policy because HDI had previously covered claims after not receiving notice about an occurrence for up to twelve months. (Hassan Statement of Undisputed Facts 5-6, ECF No. 31-1.) "HDI maintained no written policies, procedures, or guidelines to assist its representatives and agents in coverage investigations; rather, representatives were guided only by their 'prior course of dealings.'" (*Id.* 4.) Hassan observes that HDI had covered claims for two occurrences (around the same time of her injury), after receiving notice of the accident from Short Pump twelve

14

months and eight months later, respectively. (*Id.* 6.) Hassan asserts that HDI should not disclaim coverage based on Short Pump's delay in this instance because HDI did not "inform Short Pump that it would or could attempt to disclaim coverage if Short Pump again failed to notify HDI of an accident" in a timely fashion. (*Id.* 7.) Hassan further contends that Lupica need not give notice because he was not a named insured in the Policy. (Def. Mot. Summ. J. 2, ECF No. 31.)

**B.      Because Short Pump Unreasonably, Prejudicially, and Substantially Delayed Notice to HDI for 572 Days, it Materially Breached the Notice Provision of the Policy**

The Court concludes that Short Pump materially breached the notice provision of the Policy because the 572-day delay was not reasonable, HDI suffered prejudice from the delay, and the length of time that elapsed before Short Pump gave notice to HDI was substantial. In making its determination, the Court considers the three factors that bear upon the materiality of a breach of the policy's notice provision: "(1) the reasonableness of the delayed notice, (2) the amount of prejudice suffered by the insurer as a result of the delay, and (3) the length of time that elapsed before notice was given." *Penn–America Ins. Co.*, 461 F. Supp. 2d at 452 (citations omitted).

**1. The Eighteen-Month Delay was Unreasonable**

First, the Court concludes that the 572-day delay was unreasonable. With respect to the reasonableness factor,

> [t]he interpretation of policy language . . . demands [objectivity]. Failure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated. *Such a policy provision requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved.*

*Builders Mut. Ins. Co.*, 423 F. Supp. 3d at 257 (emphasis in original, internal quotation marks and citations omitted). The Parties do not dispute when Hassan suffered an injury (January 20, 2018), and when Short Pump notified HDI about the occurrence (August 15, 2019). Importantly, the record reflects that an employee at Short Pump called an ambulance for Hassan to escort her from the premises after her accident (Am. Compl., Report, ECF No. 23-3), signalling under an objective standpoint that she suffered an injury that could give rise to an insurance claim.

Hassan's suggestion that Short Pump did not timely notify HDI because of its prior dealings with the insurance company does not excuse the delay. That HDI had previously covered two claims without objecting to the delay of notice of eight months and twelve months respectively, does not render this eighteen-month delay reasonable. The notice given here exceeds by six months that of any previously covered occurrence. This undermines Hassan's argument that HDI's conduct when providing coverage for other claims allowed Short Pump to delay in satisfying the "as soon as practicable" provision in the Policy.

To the extent Hassan relies on "estoppel by conduct" as discussed in *Penn–America Insurance Company v. Mapp*, that argument does not persuade. (Hassan's Opp'n HDI Mot. Summ. J. 2, ECF No. 35.) In *Penn–America Ins. Co.*, the insurer brought an action seeking a declaratory judgment as to its liability for costs and damages in an underlying personal injury action where the insured waited two years following the "occurrence" to notify the insurer. 461 F. Supp. 2d at 444. The *Penn–America* court evaluated whether the insured's delay in notifying the insurer was material. *Id.* at 453. In considering the three factors bearing on materiality, the *Penn–America* Court found that: (1) notice was reasonable in light of the circumstances of the occurrence; (2) there was no prejudice to the insurer; and, (3) while the length of delay was

16

substantial, notice was given promptly after the insured became aware that a claim was being made involving the policy at issue. *Id.* at 454.

Significantly, in support of its finding that notice was reasonable despite being provided two years after the underlying accident, the *Penn–America* court explained that the underlying accident "occurred after the [insured] bar had closed, in a parking lot not owned by [the insured], and in spite of immediate criminal action against the driver based on intoxication." *Id.* Under those circumstances, the *Penn–America* court found the delayed notice to be reasonable because a policy holder would not objectively believe that such an incident would implicate the particular homeowners' policy at issue despite not owning the parking lot where the accident occurred after the bar closed.[10] Given the factual record before it, the *Penn–America* court found that the insured "was indeed reasonable in its delay" and that "the delay was not material." *Id.* at 454 n.9.

In contrast to *Penn–America*, Short Pump, as a party to it, certainly knew of the Policy's existence. Indeed, Short Pump had successfully submitted notice of claims to HDI near in time to that when Hassan suffered injuries. Short Pump understood how to notify HDI of an occurrence. Short Pump certainly was apprised of Hassan's injury because it completed an

---

[10] In *Penn–America*, the policyholder also had never previously given notice until after service of process, which it did again. That distinction does not pertain here.

Furthermore, Hassan did not provide evidence to show that Short Pump or Hassan relied on a course of dealing with HDI in which they could delay in notifying HDI about an occurrence "as soon as practicable." Hassan alleges only that two other occurrences involved an eight- and twelve-month delay, which HDI later settled. But there are no records about any notification—much less the timing of notice—for those two occurrences to support these assertions. In any event, HDI shows that Lupica and Short Pump had additional notice of Hassan's intent to bring a claim as of April 8, 2019, when Counsel for Hassan sent Lupica and Short Pump a demand letter before filing suit in state court. (Pl.'s Resp., Ex. 9, April 8, 2019 Demand Letter, ECF No. 36-9.)

accident report form and kept information about her accident on file.  Short Pump's duty to notify is crystal clear.[11]

Hassan suffered an injury that required calling an ambulance for medical transport.  Short Pump and Lupica waited eighteen months, after winding up the business and receiving notice of Hassan's state court litigation, to inform HDI about the occurrence.  Nothing in this record suggests that any exceptional circumstances prevented Short Pump or Lupica from notifying HDI promptly after Hassan injured her leg at the trampoline park.[12]  In sum, the record provides no justification for this delay and the Court finds it to be unreasonable.

---

[11] Furthermore, Lupica's role as the sole shareholder of Short Pump Airsports LLC, and as the operator and manager of the Short Pump trampoline park, belies Hassan's argument that Lupica had no duty to notify HDI because he was not a named insured in the Policy.  The record reflects that Lupica's position qualified him to serve as the Registered Agent for Short Pump (Pl.'s Resp. 1, ECF No. 36).  Also, his mailing address as listed in the Short Pump Airsports LLC Certificate of Formation documentation matches the mailing address that he used in the Policy. (*Compare* Pl.'s Resp. Ex. 1, ECF No. 36-1 *with* Am. Compl., Ex. 2, Policy 5, ECF No. 23-2.) Lupica, as the individual responsible for Short Pump, had a duty to notify HDI of the occurrence. Even without Lupica's participation in this declaratory judgment action, the Court may grant summary judgment to HDI, declaring that it does not owe coverage under the Policy to Short Pump or Lupica following their unreasonable 572-day delay in notifying HDI about the occurrence.

[12] Hassan argues extenuating circumstances for Short Pump's delay exist based on HDI's previous coverage of the Blanchard and Nicholas claims. (Def.'s Resp 6-7, ECF No. 35.) Hassan further questions the information provided in the Report regarding her injury, arguing that HDI's contentions regarding "what Short Pump knew (and when) are apparently derived solely from its review of an undated incident report." (*Id.* 5.)  On this record, Hassan asserts that previous dealings with HDI and Short Pump's deficient recordkeeping justify the eighteen-month delay.

As the Court has explained, Hassan does not establish "estoppel by conduct" here.  Even considering the limited information about the Blanchard and Nicholas claims in a light most favorable to Hassan, the eight- and twelve-month delays in notifying HDI about those unrelated occurrences do not justify the eighteen-month delay in this case.

Also, to the extent Hassan contends that Short Pump maintained deficient records about Hassan's injury in 2018, nothing suggests to this Court why it cannot consider the limited information provided in the Report reliable. (Am. Compl., Ex. 3, Report, ECF No. 23-3.)  The Report describes Hassan's injury as landing awkwardly on one leg and buckling, which other information in the record corroborates. (*Compare* Report, ECF No. 23-3 (leg buckling) *with* ECF No. 36-9 (demand letter describing injuries to Hassan's knee).)  In sum, these arguments do

## 2. HDI Suffered Prejudice from the Eighteen-Month Delay

Second, HDI suffered prejudice from the eighteen-month delay. As courts in this district have explained, "a prolonged delay in notification alone may breach the policy even absent a showing of prejudice." *Penn–America Ins. Co.*, 461 F. Supp. 2d at 452 (citing *Walton*, 423 S.E.2d at 192). "Prejudice is defined as damage or detriment to one's legal rights or claims." *Nationwide Mut. Ins. Co. v. Boyd Corp.*, 2010 WL 331757, at *6 (E.D. Va. Jan. 25, 2010) (internal quotation marks and citation omitted). This may include detriment because an insurance company cannot adequately and timely investigate an accident or gather information. *See, e.g., id.* (discussing how delayed notification prejudiced insurer from investigating the claim, engaging in mediation, and preparing for litigation).

The undisputed facts show that Short Pump did not inform HDI about the occurrence until 572 days after Hassan suffered injuries. Although the language in the Policy required Short Pump to notify HDI "as soon as practicable" of an occurrence that may result in a claim, Short Pump did not inform HDI about Hassan's injuries until after she filed her lawsuits in state court. More importantly, Short Pump wound up its business after Hassan's injury occurred and before HDI received notice of the injury. As a result, HDI experienced difficulty in investigating the occurrence, including interviewing witnesses.[13] In any event, where as here, the insured, without justification, waits eighteen months to provide the required notice, it is irrelevant whether the

---

not create exceptional circumstances that warrant a 572-day delay in notification, particularly when the Policy requires notice "as soon as practicable" of an occurrence.

[13] The Court observes that on April 8, 2019, Counsel for Hassan sent Short Pump a letter, copying Robert Lupica, demanding that Short Pump preserve all evidence concerning the occurrence. (Pl.'s Resp., Ex. 9, April 8, 2019 Demand Letter, ECF No. 36-9.) Thus, Hassan recognized the importance of timely investigation and recordkeeping. By April 2019, however, Short Pump had closed its business and sold its assets.

insured suffered any prejudice from the delay. *Walton*, 423 S.E.2d at 192. The Court concludes that HDI satisfies the second element of prejudice.

### 3. The Eighteen-Month Delay was Substantial

Third, the length of time that elapsed before notice was given—572 days—supports finding a breach of the Policy. *See, e.g., Aetna Cas. and Sur. Co. v. Jett*, 1995 WL 238565, No. 94-1597, *1–2 (4th Cir. 1995) (finding that a delay in notification of more than two years was a substantial and material breach of the insurance policy), *Builders Mut. Ins. Co.., Inc.*, 423 F. Supp. 3d at 255–56 (478-day delay between November 21, 2016 email regarding a potential claim and March 14, 2018 demand package caused a substantial and material breach of the insurance policy); *Chapman*, 888 F. Supp. at 746 (finding that a four-month delay was a substantial and material breach of the insurance policy). The Court concludes that HDI satisfies the third element because the length of time that elapsed before Short Pump provided notice was substantial.

### IV. Conclusion

Short Pump significantly delayed in notifying HDI of Hassan's accident. As such, the delay was both substantial and material and constituted a breach of the notice provisions of the Policy. Virginia law upholds notice provisions as a "condition precedent to recovery." *Penn–America Ins. Co.*, 461 F. Supp. 2d at 452 (citing *Chapman*, 888 F. Supp. at 745). In this case, Short Pump's breach of the notice provision in the Policy requires an award of summary judgment to HDI. As a result, HDI owes no duty to defend or indemnify Defendants Short Pump and Lupica in connection with the two ongoing state lawsuits filed by Hassan, that allege she

suffered bodily injuries on January 20, 2018 due to the trampoline accident at Short Pump's former facility.[14]

For the foregoing reasons, the Court will grant HDI Global Speciality SE's Motion for Summary Judgment and deny Basma Hassan's Motion for Summary Judgment.

An appropriate Order shall issue.

 

M. Hannah Lauck
United States District Judge

Date: 9-14-21
Richmond, Virginia

---

[14] These two lawsuits, *Hassan v. Short Pump Airsports, LLC,* Case No. 087CL19003882, and *Basma Hassan v. Robert Lupica, et al.,* Case No. 087CL20000461, remain pending in the Henrico County Circuit Court.